IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2014

**GREGORY D. VALENTINE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sumner County**
**No. 2014-CR-298     Dee David Gay, Judge**

**No. M2014-00977-CCA-R3-PC - Filed January 21, 2015**

The Petitioner, Gregory D. Valentine, appeals the Sumner County Criminal Court's summary dismissal of his pro se petition for post-conviction relief as waived or previously determined. The State responds that the post-conviction court properly dismissed the Petitioner's claims without a hearing. Upon review, we reverse and remand for further proceedings with regard to the Petitioner's ineffective assistance of counsel claim.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court
Reversed and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory D. Valentine, Only, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; L. Ray Whitley, District Attorney General; and Thomas Dean, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The record reflects that on December 10, 2009, the Sumner County Grand Jury indicted the Petitioner and five co-defendants for twenty counts of identity theft, six counts of criminal simulation, one count of forgery, one count of theft of property valued at $10,000 or more but less than $60,000, and one count of money laundering. The Petitioner was also individually indicted for one count of filing a false police report. See State v. Gregory D. Valentine, No. M2012-02487-CCA-R3-CD, 2013 WL 4068607, at *1 (Tenn. Crim. App. Aug. 13, 2013), perm. app. denied (Tenn. Dec. 12, 2013).

On October 14, 2010, the Petitioner entered best interest pleas to the offenses as charged. At the plea submission hearing, the State recited the factual basis for the convictions as follows:

> The facts stem from events on the 30th of September, 2009[,] in Hendersonville, Tennessee. At that time, one of the Bank of America branches called Hendersonville Police Department, said they had in the bank at that moment a member of a fraud ring who had perpetrated identity theft. She was in the bank at that time. Ultimately, they reported that she was leaving the bank and fleeing the premises.
>
> Hendersonville Police Department Officers were actually driving by the bank at that time; they saw the woman fleeing the bank. Then they heard the call almost immediately. They turned around; they saw the woman get into a van containing, counting her, six individuals. It was a rental van out of California.
>
> The police began an investigation at that time to determine who she was. She said she was Gail Shapiro, which is the name on the identification that she had presented to the Bank of America. The other defendants, all the others in the van, supported that story that they had just picked her up. They didn't know her.
>
> As the investigation continued, it was shown that these defendants had been together for days and had been traveling across the country. There are images in the Illinois, Chicagoland [sic] area, in Northern Indiana, of members of this group, specifically, Maurice Reed and Yolanda Carter, the two individuals who were taken for Federal prosecution going in multiple banks, perpetrating fraud, typically, in the form of account hijacking. Most of these actions occurred outside of [the] State of Tennessee and outside Sumner County.
>
> What we have is on the 30th, Maurice Reed went into a bank in Hendersonville at about 9:30 in the morning, started an account under the name of Greg Shapiro. He then went to the Madison branch at about 10:30, 10:15 I think it was; Bank of America made a transfer from the real Greg Shapiro's account to the bogus Greg Shapiro account he had just created, transferred $16,000, withdrew $7,500. Then [he returned to] the van, and he went back to Hendersonville later that day. They withdrew another $7,500 from a different branch of Bank of America.

And then around 2:00 in the afternoon, with all six individuals in the van, Yolanda Carter went into the Bank of America, attempted to start an account under the name of Gail Shapiro. The bank got wise, called Hendersonville. I've already explained that part of the story.

Based on that information and the numerous false identifications that were found in the van, were later found in the van, and the many scraps of paper in the van with bank account holder's names, social security numbers, account number[s], date of birth, sometimes mother's maiden name that sort of information that led to the charges before the Court.

Criminal Simulation for the fake [identifications]. Identity Theft for the information on the many pieces of paper regarding the individual account holders. False Report for saying that the defendant who was later determined to be Yolanda Carter was Gail Shapiro. Theft over $10,000 relating to the $15,000 that was removed from Greg Shapiro's bank account. Forgery for Maurice Reed signing the name of Gregory Shapiro on the bank documentation to open the false bank account that morning in Hendersonville, and identity theft for his use of Greg Shapiro's name at that time, and one Identity Theft count for Yolanda Carter using Gail Shapiro's name, that I've already discussed.

That's the facts related to this charge. There is a money laundering charge that is Money Laundering by Promotion of a Criminal Enterprise by Reinvesting Criminal Proceeds. So it's under [Code section 39-14-]903(b) of the money laundering [statute]. That is for the deposit of $100 that went in to start the bogus account on that morning in the name of Greg Shapiro. I think that covers all the facts.

Mr. Valentine according to the State's information is the leader of this enterprise, at least the highest ranking person of the enterprise that was in the van; therefore, we have made a different offer to him than to the others.

Id. at *1-2. Pursuant to the plea agreement, the Petitioner received an effective sentence of twelve years and eight months, with service of thirty-two months at seventy-five percent in the county jail followed by service of ten years at thirty percent on state probation.

Shortly thereafter, on October 19, 20, and 21, 2010, the Petitioner filed three pro se motions to withdraw his pleas, which the post-conviction court denied without an evidentiary hearing. Id. at *3. The Petitioner appealed, and this court reversed the trial court's denial

and remanded the case for a hearing. See State v. Gregory Darnell Valentine, No. M2010-02356-CCA-R3-CD, 2012 WL 3263117 (Tenn. Crim. App. Aug. 10, 2012). This court described the Petitioner's three motions as follows:

> Considering all three pleadings together and in proper context, [the Petitioner] alleged that he is entitled to withdraw his guilty pleas (1) because he was coerced to enter the guilty pleas by his attorney using "my baby['s] mother as a bargaining tool"; (2) because other persons identified only as "Johnson," "Ross," and "Young" were supposed to be released upon his guilty pleas, and they were not; and (3) because of somewhat vague allegations of a misunderstanding between [the Petitioner] and the State concerning the negotiated plea agreement.

Id. at *1-2.

After conducting an evidentiary hearing on September 28, 2012, the trial court once again denied the Petitioner's motions to set aside his pleas. At the conclusion of the hearing in which the Petitioner, co-defendant Takisha Johnson, and trial counsel testified, the trial court stated in pertinent part:

> The Court went through [the] guilty plea proceedings with the [Petitioner], and at the time I was very comfortable and I'm still very comfortable that at the time the [Petitioner] entered his plea on October 14, 2010, that it was knowing, that it was voluntary, and there was no force, there was no coercion whatsoever.
>
> . . . .
>
> In referring to the testimony that I heard today, [the Petitioner]'s case was set for trial on November 1st. [The Petitioner] testified. He and Ms. Johnson are convicted felons. They both have numerous felony convictions on their record. I do not find the testimony of [the Petitioner] believable, credible or truthful. The testimony about an all white jury, [that I am] a mean judge, [that I] will give you 50 years was discredited by [trial counsel,] and I find that to be unbelievable.
>
> Kisses in the jail, I find that to be incredible and unbelievable. Many things the [Petitioner] states do not make any sense. He stated that . . . after he [submitted] his guilty plea, he went back there and did this petition because he was no longer in the presence of his abusers. That's not like the character

of this [Petitioner]. He's one that stands up and he'll continue to stand up and he's not intimidated by anything or anybody. That's simply not true.

The testimony of Takisha Johnson is not credible. She was on parole in California when she came here. She was not on vacation when she came through this jurisdiction. And she came here today all the way from California at her own expense, own time, own money. I find her testimony not believable.

To the contrary, I [ac]credit the testimony of [trial counsel, who is] experienced as a prosecutor, defense attorney, [who has represented] thousands of defendants. He represented [the Petitioner] in this case. He met with [the prosecutor,] and he met with [the Petitioner] many times, and I found that to be true in dealing with the numerous attorneys[,] and the problems that accompanied this case through Criminal Court.

The testimony is clear that [the Petitioner] gave an initial impression that he would take the offer after it was made. And it's worth mentioning here a 30-year offer coming down to 32 months, [effectively] two years [in confinement], and ten years['] probation is significant, absolutely significant, along with the fact that there is a guarantee of no federal prosecution.

Now, it's not manifest injustice for [the Petitioner] to take this incredible offer. It is a bit of reality, with the prosecutor, hard work of the defense attorney to get to this point in a very difficult case. Although the [Petitioner] later changed his mind about the plea and although he had an opportunity to talk to his girlfriend, he agreed to take it.

Now, [the Petitioner] is a grown man. He's very assertive. He knows what he wants, and he wanted a guarantee that this plea would not be used against him if I did not accept the plea. He wanted a guarantee that there would be no federal prosecution, and he got two years in jail with a certain date to be released, and that's what he wanted.

. . . .

In looking at Rule 32 and determining manifest injustice, what I see here is a complete absence of manifest injustice. What I see here is the criminal justice system at work, at its best, preserving the constitutional rights of [the

Petitioner], giving him the best the Sixth Amendment has to offer, and [trial counsel] giving him opportunities to come into court, do motions and so forth.

There is a desperate need in our criminal justice system for finality. How bad does it reflect on the system when somebody comes in immediately after they are under oath[,] and they say one thing, and then they go out of court and say, huh-uh, didn't mean it, I want a do-over? We would be completely tied up for years.

To the contrary, as I stated, this Court has bent over backwards to protect the constitutional rights of this [Petitioner], and they have been protected. There has been justice in this case to the advantage of the [Petitioner], great advantage to the [Petitioner]. I think it is absolutely absurd in referring to the nature and context of these allegations–it is, as [the prosecutor] stated, manipulation at its finest.

That, Mr. Valentine, this Court will not accept and neither will the criminal justice system of Tennessee. This is respectfully denied.

Gregory D. Valentine, 2013 WL 4068607, at *9-11.

In its opinion on direct appeal, this court affirmed the trial court's denial and specifically concluded:

[The Petitioner]'s plea colloquy shows that he entered his best interest pleas voluntarily, that he was pleased with trial counsel's representation, and that he understood the terms of the plea agreement and the rights he was waiving by entering his pleas. We conclude the transcript of the plea submission hearing is devoid of evidence that trial counsel coerced [the Petitioner] . . . into entering his best interest pleas. We also conclude that [the Petitioner] failed [to] show at the evidentiary hearing that his plea should be withdrawn to correct manifest injustice. In applying the aforementioned Blankenship factors, we note that by all accounts [the Petitioner] was a very intelligent individual. The State concluded that [the Petitioner] was the leader of an elaborate identity theft ring that had traveled across the country stealing money from individuals' bank accounts. Trial counsel stated that [the Petitioner] was meticulous about the details of his plea agreement, even to the point of requiring that a specific date for his release from jail be included in his plea agreement and judgments of conviction. Moreover, the trial court observed that [the Petitioner] was "very assertive" regarding the terms of his

-6-

plea agreement and knew what he wanted when it came to his case. Regarding [the Petitioner]'s familiarity with criminal proceedings, the record shows that [the Petitioner] had an extensive criminal history, which included convictions as a juvenile for one count of murder in the first degree, three counts of attempted murder, and one count of accessory for murder, at least one felony conviction as a adult, and many misdemeanor convictions. [The Petitioner]'s extensive criminal history as well as his assertiveness regarding the terms of his plea agreement in the instant case indicates that he was extremely familiar with criminal proceedings at the time he entered his pleas. Regarding whether [the Petitioner] was represented by competent trial counsel and had the opportunity to confer with counsel regarding his options, the record shows that trial counsel properly advised him of his options at all stages of the proceedings and was able to procure an extremely favorable plea agreement for [the Petitioner]. Although [the Petitioner] previously had been offered thirty years in confinement, trial counsel was able to convince the State to agree to thirty-two months at seventy-five percent in the county jail followed by ten years on state probation. The proof at the evidentiary hearing shows that trial counsel met with [the Petitioner] several times, provided him with the relevant offer prior to the date of the plea submission hearing, and thoroughly discussed the offer with him. Regarding the extent of advice from counsel and the court regarding his charges, the record shows that both trial counsel and the court reviewed [the Petitioner]'s charges with him extensively and informed him of the sentences he would face if he proceeded to trial. Finally, regarding the reasons for [the Petitioner]'s decision to enter his pleas, the record indicates that [the Petitioner] entered his pleas to avoid a greater penalty than what he might have received at trial and to have his co-defendants, including Johnson, the mother of his child, released for time served.

Id. at *13. Thereafter, on December 12, 2013, the Tennessee Supreme Court denied the Petitioner's application for permission to appeal.

On April 15, 2014, the Petitioner filed a timely pro se petition for post-conviction relief, alleging that: (1) his guilty plea was unlawfully induced or involuntary, (2) his conviction was based on the use of a coerced confession, and (3) he received ineffective assistance of counsel. In support of the first two grounds for relief, the Petitioner asserted that he was emotionally coerced by a visit from his co-defendant, Takisha Johnson, to accept the plea agreement rather than to risk going to trial. In support of his ineffective assistance of counsel claim, the Petitioner alleged "that counsel was ineffective due to his actions regarding the plea negotiations and counsel's performance in obtaining the petitioner's acceptance of said plea." He further maintained that counsel allowed the coercion to occur

and that the Petitioner was prejudiced because "he desired to proceed to trial and never wanted to accept a plea from the state."

The post-conviction court summarily dismissed the petition with a written order filed on May 1, 2014. In its summary of the procedural background and findings of fact, the court noted that it had conducted a lengthy evidentiary hearing on September 28, 2012, regarding the Petitioner's motions to withdraw his guilty pleas. The post-conviction court further stated that this court affirmed the trial court's denial in its opinion on direct appeal. Specifically, this court held that the Petitioner's pleas were voluntarily entered and that he was represented by competent counsel who "was able to procure an extremely favorable agreement for [the Petitioner]." See Gregory D. Valentine, 2013 WL 4068607, at *13. In its conclusions of law, the post-conviction court held:

> This Court finds that the allegation in the Petition that the conviction was based on a coerced confession has been waived. T.C.A. §40-30-106(g). Further, the allegations of an invalid guilty plea and ineffective assistance of counsel have been previously raised and evidence was presented in the evidentiary hearing conducted on September 28, 2012. Arguments were made, this Court made a ruling, an appeal was taken and the ruling was affirmed by the Court of Criminal Appeals. Therefore, those grounds have been adequately previously determined. T.C.A, §40-30-106(h).

> For these reasons, this Petition is DISMISSED.

The Petitioner filed a timely notice of appeal on May 15, 2014.

## ANALYSIS

The Petitioner argues that the post-conviction court erred in summarily dismissing his petition for post-conviction relief. He claims to have "maintained throughout every proceeding that he was coerced into his plea" and that the post-conviction court erred in holding that he had waived the issue that his convictions were based on a coerced confession. The State responds that the court's summary dismissal of post-conviction relief was proper because the Petitioner's claims were waived or previously determined. Upon review, we reverse and remand this matter for appointment of counsel with respect to the Petitioner's claim of ineffective assistance of counsel.

We review the propriety of a post-conviction court's summary dismissal of a post-conviction petition de novo. See Burnett v. State, 92 S.W.3d 403, 406 (Tenn. 2002); Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001). Post-conviction relief is only warranted when

a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Post-Conviction Procedure Act states that a petition for post-conviction relief "must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds." T.C.A. § 40-30-106(d). Bare allegations that a constitutional right has been violated and mere conclusions of law will not be sufficient to warrant further proceedings. See id. Furthermore, the petitioner's "[f]ailure to state a factual basis for the grounds alleged shall result in immediate dismissal of the petition." Id. "If, however, the petition was filed pro se, the judge may enter an order stating that the petitioner must file an amended petition that complies with this section within fifteen (15) days or the petition will be dismissed." Id.

In the event that an amended petition is incomplete, the court shall determine whether the petitioner is indigent and in need of counsel and may appoint counsel and enter a preliminary order if necessary to secure the filing of a complete petition. Id. § 40-30-106(e). "If the facts alleged in the petition, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined, the post-conviction court shall dismiss the petition." See id. § 40-30-106(f). The order of dismissal shall set forth the post-conviction court's conclusions of law. See id. A post-conviction court shall enter an order or a preliminary order within thirty (30) days of the filing of the petition or amended petition. See id. § 40-30-106(a).

In Burnett v. State, the Tennessee Supreme Court outlined the process that a post-conviction court must follow in determining whether a petition for post-conviction relief should be dismissed without a hearing. 92 S.W.3d 403, 406 (Tenn. 2002). First, the court should review the petition to determine whether the petition asserts a colorable claim. Id. A colorable claim is defined as "'a claim that, if taken as true, in the light most favorable to the petitioner, would entitle petitioner to relief under the Post-Conviction Procedure Act.'" Id. (quoting Tenn. Sup. Ct. R. 28 § 2(H)). Accordingly, "[i]f the facts alleged, taken as true, fail to show that the petitioner is entitled to relief, or in other words, fail to state a colorable claim, the petition shall be dismissed."[1] Id. (citing T.C.A. § 40-30-206(f) (1997)). Second, the post-conviction court "may afford an indigent pro se petitioner the opportunity to have counsel appointed and to amend the petition, if necessary." Id. (citing T.C.A. § 40-30-207(b)(1) (1997)).[2] The Burnett court summarized the last step in the process:

---

[1] Section 40-30-206 was renumbered to 40-30-106 in 2003.

[2] Section 40-30-207 was renumbered to 40-30-107 in 2003.

In the final stage of the process preceding an evidentiary hearing, the trial court reviews the entire record, including the petition, the State's response, and any other files and records before it. If, on reviewing these documents, the court determines conclusively that the petitioner is not entitled to relief, the petition shall be dismissed [without an evidentiary hearing].

Id. (citing § 40-30-209(a) (1997)).[3]

When determining whether a colorable claim has been presented, pro se petitions are held to a less rigid standard than formal pleadings drafted by attorneys. Allen v. State, 854 S.W.2d 873, 875 (Tenn. 1993) (citing Gable v. State, 836 S.W.2d 558, 559-60 (Tenn. 1992)). "If the availability of relief cannot be conclusively determined from a pro se petition and the accompanying records, the petitioner must be given the aid of counsel." Swanson v. State, 749 S.W.2d 731, 734 (Tenn. 1988) (citing T.C.A. §§ 40-30-104,-107, -115). However, "[w]here a petition conclusively shows that the petitioner is entitled to no relief, it is properly dismissed without the appointment of counsel and without an evidentiary hearing." Givens v. State, 702 S.W.2d 578, 580 (Tenn. Crim. App. 1985) (citing T.C.A. § 40-30-109).

Initially, we agree with the post-conviction court that the Petitioner's allegation of an involuntary plea was previously determined on direct appeal and therefore may not be grounds for post-conviction relief. See T.C.A. § 40-30-106(h). To the extent that the Petitioner is attempting to relitigate the issues raised and rejected by this court on direct appeal, the post-conviction court correctly dismissed the claims. Moreover, the Petitioner's claim that his convictions were based on a coerced confession is waived because the Petitioner failed to raise this argument on direct appeal. See T.C.A. § 40-30-106(g). However, we disagree that the Petitioner raised the claim of ineffective assistance of counsel at the hearing on his motions to withdraw his pleas or that the issue was "previously determined." See, e.g., Fallon Lynn Tallent v. State, No. M2007-01336-CCA-R3-PC, 2008 WL 762486 (Tenn. Crim. App. March 24, 2008) (reversing summary dismissal and recognizing that although the petitioner's claims appear to be nothing more than a thinly veiled attempt to relitigate issues previously determined on direct appeal, petitioner was entitled to appointment of counsel because her claims were raised in the context of ineffective assistance of counsel); see also Jeremy Crosby v. State, No. M2007-00611-CCA-R3-PC, 2008 WL 1850805 (Tenn. Crim. App. Apr. 25, 2008) (affirming the majority of post-conviction court's order summarily dismissing petition but remanding case for appointment of counsel to address petitioner's ineffective assistance of counsel claim).

---

[3] Section 40-30-209 was renumbered to 40-30-109 in 2003.

The Petitioner alleged in his post-conviction petition that trial counsel rendered ineffective assistance with regard to the plea negotiations and in obtaining the Petitioner's acceptance of the plea. He asserted that trial counsel was aware that the Petitioner wished to proceed to trial, but arranged a meeting with Takisha Johnson after the Petitioner refused the State's plea offer. He maintains that trial counsel failed to protect his interest for these reasons. When taking the allegations in the petition as true and in the light most favorable to the Petitioner, we conclude that the Petitioner presented a colorable claim for relief sufficient to withstand summary dismissal of the ineffective assistance of counsel claim. To the extent that the post-conviction court concluded that the Petitioner's claim lacked merit, we note that "[t]he ultimate success or failure of a petitioner's claims is not a proper basis for dismissing a post-conviction petition without conducting an evidentiary hearing." William Alexander Cocke Stuart v. State, No. M2003-01387-CCA-R3-PC, 2004 WL 948390, at *3 (Tenn. Crim. App. May 4, 2004) (citing Roosevelt Malone v. State, No. E2002-00782-CCA-R3-PC, 2003 WL 21145488, at *2 (Tenn. Crim. App. May 16, 2003); T.C.A. § 40-30-106(b)-(d). Furthermore, there is no requirement that a petitioner prove his claims; he must only allege a colorable claim in his petition. See Shazel v. State, 966 S.W.2d 414, 415-16 (Tenn. 1998) ("There obviously is an important distinction between the right to seek relief in a post-conviction proceeding and the right to have relief in a post-conviction proceeding."). It is at the evidentiary hearing that "a petitioner would be required to prove his claims by clear and convincing evidence." Id. Because the denial of effective assistance of counsel is a constitutionally recognized ground for post-conviction relief, we conclude that the post-conviction court prematurely dismissed the Petitioner's claim. Accordingly, we reverse the judgment of the post-conviction court summarily dismissing the petition with regard to the Petitioner's allegation of ineffective assistance of counsel. The case is remanded for appointment of counsel and the opportunity to amend the petition for post-conviction relief pursuant to Tennessee Code Annotated section 40-30-107. In all other respects, the judgment of the post-conviction court is affirmed.

## CONCLUSION

Upon a thorough review of the record, we reverse the judgment of the Sumner County Criminal Court and remand the case for proceedings consistent with this opinion and with the Post-Conviction Procedure Act.

_____
CAMILLE R. McMULLEN, JUDGE